Ewing *v.* Maury.

the exclusive judge. Our duty is to enforce it, if not violative of the organic law.

The judgment must be affirmed.

3L 387
7L 603

RANDAL M. EWING, Adm'r, *v.* MARY MAURY *et als.*

1. ADMINISTRATION. *Insolvent Estates.* When the administrator of an estate suggests to the County Court the insolvency of the estate, the legal import of his act is that he has ascertained that the personal assets are not sufficient to satisfy all its debts, and, therefore, that the estate is to be divided ratably among the creditors; and, if the estate proves to be insolvent, the right of the creditors to share the estate ratably becomes fixed from the date of the suggestion.

2. SAME. *Same. Chancery Practice and Pleading. Creditors quasi parties.* If, under a bill filed by the administrator after a suggestion of insolvency against the widow and heirs of the intestate for a sale of realty, the administration is properly transferred to the Chancery Court, and the creditors required to file their claims, and they do file, and have the same allowed, without objection to the form in which these acts are done, the creditors thereby become *quasi* parties, with the right to be heard during the progress of the cause, and to appeal.

3. SAME. *Same. Same. Proceeds of realty sold, a trust fund.* The proceeds of land sold under the decrees in such a cause constitute a trust fund for the benefit of all the creditors ratably, which trust will follow the fund into the hands of any creditor who is a party or *quasi* party, and the trust may be enforced by the court, in a summary way, by ordering the creditor to pay the money in excess of his ratable share into the court within a given time, otherwise that execution issue.

Ewing v. Maury.

4. SAME. *Same. Creditor holds excess of his pro rata in trust.* Where funds thus derived from the sale of realty are ordered to be paid to the administrator, "for the purpose of paying off the indebtedness of the estate," without more, the administrator can only pay out the funds according to law, that is, ratably among all the creditors, and if he do in fact pay one creditor more than his share, the creditor will hold the excess in trust for the other creditors.

5. SAME. *Same. A surety may file claim. When.* A surety against whom judgment has been rendered may, at any time thereafter, and within two years from the payment of the money, come into a suit filed for the administration of his principal's estate as insolvent, and, before the distribution of the funds, have the amount of the judgments allowed in his favor as a claim against the estate.

---

FROM WILLIAMSON.

---

Appeal from the Chancery Court at Franklin. W. S. FLEMING, Ch.

J. G. WALLACE for complainant.

T. W. TURLEY for defendants.

COOPER, J., delivered the opinion of the court.

In this administration suit, the estate proved insufficient to pay the debts, and some of the creditors having received, during the progress of the cause, more than their *pro rata* share of the assets, the Chacellor ordered them to refund the excess. John S. Park, one of these creditors, has brought the case up by writ of error.

In the year 1864, Abram P. Maury died intestate in Williamson county, leaving a widow and two children him surviving. Randal M. Ewing, who had been appointed and qualified as administrator of the intestate's estate in 1865, filed the original bill, on

the 2d of April, 1866, making the widow and children
of the decedent alone parties defendant by name. The
bill stated the foregoing facts, and specified the prop-
erty, real and personal, of which the intestate had died
seized and possessed. One object of the bill was to
have the year's allowance to the widow in the person-
alty, and her dower in the realty ascertained and
allotted. But the bill further stated that the personal
assets were wholly insufficient to meet the debts of the
estate, a schedule of which as far as presented was
exhibited, amounting to several thousand dollars, and
that a sale of realty would be necessary to pay debts.
It averred that the complainant, as administrator, had
suggested the insolvency of the personal assets of the
estate to the County Court, and asked, in view of this
fact, that the administration be removed from the
County to the Chancery Court, and that a sufficiency
of the realty be sold to pay the debts. The widow
filed an answer admitting the facts to be true as al-
leged in the bill, and consenting to the relief sought.
An answer was also put in for the children by their
general guardian, who was their maternal grandfather.
Upon these answers the court, at the April term, 1866,
rendered a decree, finding the facts to be as set out
in the bill, and among other things, that the com-
plainant had duly suggested to the County Court the
insolvency of the personal estate of the intestate, and
that such personalty had been exhausted in due course
of administration. It was further found that the es-
tate exceeded in value one thousand dollars, and it
was ordered that the administration be transferred from

the County to the Chancery Court, with leave to the complainant, as administrator, to pay his accounts and make his settlements with the clerk of the Chancery Court. It was further "decreed by the court," that all persons having claims against said estate shall present the same duly proven within the time prescribed by law to the clerk and master of the Chancery Court, and that said administrator make publication and notify the creditors of said estate where to file said claims. The decree contained directions in relation to the widow's dower and year's allowance, which need not be noticed.

Such proceedings were had in the cause that the necessity of a sale of the realty to pay debts was made to appear to the court, and a decree was rendered directing the clerk and master to sell a sufficiency of the land to pay these debts and the expenses of administration. Such proceedings were also had that the creditors of the estate, including the appellant, John S. Parks, filed their claims, which were reported upon, and with one or two exceptions allowed.

No objection was made to the mode in which the creditors came in and presented their claims, nor is any point now made in relation thereto on behalf of the administrator or heirs. There was delay in making sales of the realty of the estate, which consisted principally of unimproved lots in the suburbs of Nashville. It turned out that the proceeds of sale fell far short of paying the debts, and no rate bill for the appropriation of these proceeds among the creditors was made until the June term, 1875.

In the meantime, on the 7th of September, 1872, a bill was filed by W. O'N. Perkins, as a creditor of the estate, against the administrator, the widow and children of the intestate, and the creditors who had filed their claims in the original suit. Perkins stated that he was the surety of the intestate on certain notes to M. F. DeGraffenreid, on which judgments had been recovered against him on the 5th of July, 1871. He further stated that he had suggested to the County Court the insolvency of the estate both real and personal, that the estate was worth more than a thousand dollars, and he asked that the administration be transferred to the Chancery Court. The appellant, Park, seems to have been made a defendant to this bill as one of the creditors, and he allowed it to be taken for confessed against him. Such proceedings were had in this cause, that the Chancellor by a decree, with proper recitals, again transferred the administration to the Chancery Court, and ordered all proper accounts. It was then consolidated or heard with the original suit, and upon a report of the master, to which no exceptions were filed, Perkins was, by decree rendered in September, 1874, declared to be a creditor of the estate to the extent of the judgments recovered against him, the decree reciting that he had paid the judgments. The claims on which these judgments were rendered had previously been filed and allowed in the name of M. F. DeGraffenreid, but perhaps for a less amount than was actually due.

On the 9th of June, 1875, a decree was rendered in both of these causes, upon the report of the master,

declaring the *pro rata* of each of the creditors of the estate, whose claims had been ascertained and allowed, in the funds on hand for distribution. The report of the master, thus confirmed without exception, further stated that it would be seen, by reference to the settlement of the administrator, and the schedules thereto, made by the administrator, that, on the 2d of December, 1867, the administrator had paid to John S. Park, the appellant, his claims against the estate in full, and on a subsequent day to another creditor his claim in full, taking from them respectively, "as he alleges," their refunding bonds to refund any excess in the payments over and above the *pro rata* which might be eventually found due upon such claims. The report also stated the amount of excess of payment on these claims. The court, after reciting these facts, directed the clerk and master to proceed at once to collect from the parties the excess thus found, or to "take judgment for the same with interest on the refunding bonds of the parties." These collections, with the funds on hand, constituted the means out of which the *pro rata* then declared was to be paid. At a subsequent day of the same term, this part of the decree was so modified as to direct execution to issue against the respective parties for the overpayments as found, unless the amount, with interest, was paid into court within ninety days from the adjournment of the then pending term. It was the execution issued against John S. Park under this decree, which was superseded by the present writ of error. If, as the record in the Perkins branch of this case

seems *prima facie* to show, and has not been disputed in argument, the appellant Park was a defendant to that suit by service of process and *pro confesso* order, it is clear he cannot call in question the claim of Perkins, allowed upon a report of the master, confirmed without exception. Besides, our decisions based upon the peculiar wording of our statutes, leave no doubt of Perkins' right to come in at any time after judgment rendered against him as surety, and within two years after the payment of the money, the assets of the estate not being distributed, and have the amount allowed against the estate of his principal. *Scott* v. *Lanham,* 8 Yer., 420; *Marshall* v. *Hudson,* 9 Yer., 57; *Maxey* v. *Carter,* 10 Yer., 521. Strictly speaking, according to these cases, the surety is not a creditor until he has paid the debt, but may proceed after judgment by virtue of the statute. And, although the same claim had been previously allowed in the name of DeGraffenreid, the creditor, yet the demand, as ascertained by the judgments, seems to have been for a larger amount. Where a party is entitled to more extensive relief than he can procure in the administration suit under the usual decree, he may be permitted to file a new bill as supplementary to the former suit. *Brooks* v. *Gibbons,* 4 Paige, 377 *Shepherd* v. *Towgood,* T. & R., 379. It is probable, that the additional relief might, under our statute, be obtained by petition in the original cause. But no objection was made to the form in which Perkins chose to assert his claim.

The new bill seems to have been resorted to under

the impression that the suggestion of insolvency in the County Court ought to show that the estate was insolvent both as to the realty and personalty, the suggestion on which the bill of the administrator was filed being only of the insolvency of the personal estate. The same impression appears in the petition of the appellant for a writ of error. Such an impression is not warranted either by the statute, or the decisions of this court. The statute requires the personal representative to make the suggestion of insolvency whenever he ascertains "that the estate committed to his charge is insolvent." Code, section 2328. The estate committed to his charge consists of the personal effects, for he has nothing to do with the realty by virtue of his office of administrator. When an administrator suggests to the County Court the insolvency of an estate, the legal import of the act is, that he has ascertained that the personal assets are not sufficient to satisfy all of its debts, and therefore, that the estate is to be divided ratably among the creditors. *Fleming* v. *Taliaferro*, 4 Heis., 352; *Norville* v. *Coble*, 1 Lea., 465. And a bill in chancery may be filed at any time after the estate is reported insolvent to the County Court. Code, section 2366. From the date of suggestion, the right of the creditors to share the estate ratably becomes fixed. Code, sections 2326, 2389. That right is not made to depend upon the uncertain contingency of the insufficiency of the realty. The bill of the administrator was, therefore, sufficient to secure equality of rights among the creditors, after the suggestion of insolvency in the County Court. All

the facts necessary to give the court of chancery jurisdiction in such cases was averred and found, and the administration regularly transferred to the Chancery Court.

In other respects, the bill seems to have been framed with a view to the provisions of the Code, section 2267 *et sequente.* But under those provisions, as well as under the provisions of the Code regulating the administration of insolvent estates in the Chancery Court, (Code, section 2362 *et seq.*), all the creditors have the right to come in under the bill and share all the assets ratably. *Dulles* v. *Read,* 6 Yer., 53. And if all parties acquiesce in allowing the creditors to come in and file their claims, however informally, and have them acted on, it is sufficient, and the creditors become *quasi* parties according to the English rule of chancery practice, and are thereby bound by the proceedings, and have the right of hearing during the progress of the cause, and of appeal. *Caruthers* v. *Caruthers,* 2 Lea, 264; Dan. Ch. Pr., 635, 1491, 1591. There can be no doubt, therefore, that the appellant was a party to the original cause so far as to render the decrees and proceedings conclusive upon him, unless reversible for error on appeal taken in due time.

The errors relied on are in the allowance of the Perkins claim, already considered, and in the decree against the appellant for the over-payment.

The suggestion of the insolvency of the estate, the estate proving actually insolvent, fixed the right of every creditor to a ratable share of the estate, and,

*e converso*, necessarily deprived every creditor of the right to more than that ratable share. The record shows, and the fact is not disputed, that the administrator did, on the 2d day of December, 1867, pay to the appellant the full amount of his claim. This was done under the belief, at that time entertained by all parties, that, although the estate was insolvent as to the personalty, the realty would sell for more than enough to pay all the debts. If now the payment had been made with the express agreement that the creditor should refund if it should eventually be found that he was not entitled to his debt in full, such an agreement would be sustained by the consideration of the payment, and would be binding. The final decree complained of recites that the administrator made such an agreement, and took from the appellant a bond conditioned to refund the excess. The argument is, that the recital of the decree is not sustained by the facts in evidence, the report of the master only stating that the administrator had taken such a bond "as he alleged." At a previous term of the court, the master, in pursuance of a decretal order to that effect, reported that he had taken and stated an account with the administrator, a summary of which is embodied in the report, and all the items of which, debit and credit, are given in a schedule appended to the report. Among the credits thus allowed to the administrator are the payments made to the appellant, on the 2d of December, 1867, in full of his claims. The master further reports as follows: "The administrator took from John S. Park, at the time of the

payment made to him, his obligation to refund whatever portion might be necessary in the event the estate should prove insolvent." This report was on the 5th of October, 1871, in all respects confirmed, no exceptions by any party having been filed to it. If, therefore, the rights of the appellant depend upon a positive statement by the clerk of the fact that the administrator had taken a refunding bond, here we have that fact in a report not excepted to by him. The real doubt, however, though not urged in argument, is, whether the recital was within the purview of the reference under which the report was made.

Be this as it may, the fact is beyond dispute that the appellant received during the progress of the suit, to which he had become a *quasi* party by filing his claim and having it allowed, more than he was ratably entitled to out of the assets of the estate. These assets were obtained by a sale of lands belonging to the heirs, and constituted a fund in the custody of the court in trust for the creditors ratably. Every creditor, and every party to the suit who received any portion of this fund, unless paid to him by order of the court, would receive it coupled with the trust. There is no order of court directing the fund in controversy to be paid to the appellant on his claim or otherwise. There is no order of court for the payment of any portion of the assets *pro rata* or otherwise to the creditors. No rate bill, and no dividend was ever made until the June term, 1875. The appellant has obtained in some way more than his share of these trust moneys. The power of the court, in

a summary way, to compel a party who has obtained possession of its funds without authority, to restore the same, can scarcely be doubted. *Burchard* v. *Phillips*, 1 Paige, 67.

The record shows that in December, 1866, when the first sales were reported, the court ordered the master to "pay the cash received, and the proceeds of the notes when collected, to the administrator for the purpose of paying off the indebtedness of the intestate's estate." The same order is repeated at the October term, 1867, touching the share of the estate in the proceeds of the sale of the land in Gibson and Dyer counties. Afterwards, the master was directed to loan the money on hand.

The payments of the appellant were made to him by the administrator out of the funds thus received. He received the money for the purpose of "paying off" the debts of the estate. In the absence of positive instructions by the court, these payments could only be properly made according to law, that is, ratably among all the creditors. The administrator himself, and any party to the suit who received from him any portion of these funds beyond what he was entitled to, would hold the funds subject to the trust for all the creditors. The power of the court to make a party to the suit account therefor, is too clear for argument. This is what the court of chancery undertook to do by the decrees of the June term, 1875. The amount with which the appellant was chargeable having been ascertained, the court ordered him to pay it in within a given time, and on failure, that exe-

cution issue.    There is no judgment upon a refunding bond, and, therefore, the arguments of the learned counsel, based upon this hypothesis, need not be considered.

It need scarcely be added, that a receipt of trust funds by a party to the suit would not, without an order of court, be a satisfaction of the debt, nor dissolve the creditor's connection with the case.

There is no error in the decrees complained of, and they will be affirmed with costs.